IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) Case No. 1:09-cv-1330 <br> SEAN NATHAN HEALY ) <br> ) Judge Conner <br> Defendant, ) <br> and ) <br> ) <br> SHALESE HEALY and ) <br> SAND DOLLAR INVESTING PARTNERS, LLC, ) <br> ) <br> Relief Defendants. ) <br> ) | |
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) Case No. 1:09-cv-1331 <br> SEAN NATHAN HEALY, ) <br> ) Judge Conner <br> Defendant, ) <br> and ) <br> ) <br> SHALESE HEALY and ) <br> SAND DOLLAR INVESTING PARTNERS, LLC, ) <br> ) <br> Relief Defendants. ) <br> ) | |

**RECEIVER'S REPLY BRIEF IN SUPPORT OF
MOTION FOR AN ORDER ESTABLISHING BIDDING
PROCEDURES AND APPROVING SALE OF VEHICLES**

{00142496;v1}

Melanie E. Damian, Esq., as the court-appointed receiver (the "Receiver") in the above-captioned actions, hereby files this Reply Brief in Support of her Motion for an Order Establishing Bidding Procedures and Approving the Sale of Vehicles (the "Motion"),[1] and in support states as follows:

## I.   INTRODUCTION

As demonstrated in the Motion, the receivership estate would greatly benefit from the sale of the Vehicles eliminating the need to store, maintain and insure those Vehicles. Further the sale of the Vehicles is expected to produce nearly $1 million in cash (an asset unlike the Vehicles that will not depreciate over the course of these civil actions) for the estate.

The best proof that the Vehicles are depreciating at a rapid rate is the fact that the Healys marketed and sold eight luxury vehicles over the last year (each car was sold less than a year after it was purchased) taking a significant loss on each sale. For example, in February and March 2008, the Healys purchased two Lamborghini Gallardos and less than one year later traded those cars in taking a $50,000 loss. *See* Deposition of Anthony Cipriano dated July 21, 2009, at pg. 50, ln. 1-16, an excerpt of which is attached hereto as **Exhibit A**. Then in April 2009, the Healys sold a 2008 Lamborghini Roadster that they only had for a couple of months taking a $65,000 loss. *See id.* at pg. 51, ln. 3-13 (Exhibit A). Based on

---

[1] All capitalized terms used but not defined herein shall have the definitions ascribed to them in the Motion.

2

{00142496;v1}

these rates of depreciation, the only way to preserve the value of the Vehicles is to sell them. Keeping the Vehicles as part of the estate would not actually preserve the *status quo*, as the Healys argue, because the rate of depreciation and costs of maintenance (approximately $4,500 per month and at least $7,000 per month starting in January 2010 when the estate must pay for a storage facility) would just continue to reduce the value of the receivership estate.

Thus, the Receiver believes that not only the investors but also the Healys will benefit from the immediate sale of the Vehicles. Indeed, if Plaintiffs prevail, higher sale proceeds means increased distributions to investors, thereby reducing the amount for which the Healys would be liable; if the Healys prevail, the proceeds of sales consummated today will have far greater value than the Vehicles will have one year or even six months from now, after a final determination in these actions is made. Moreover, Sean Healy has been indicted by a federal grand jury and is out on bond but not permitted to leave the states of New York, New Jersey and Pennsylvania. Therefore, in the unlikely event this Court were to modify the TROs and Preliminary Injunctions to permit Mr. Healy to take possession of and/or drive the cars, he is not likely to be permitted to return to South Florida to do so anytime soon. The idea that the Receiver would have to live by the Healys' poor decisions to spend approximately $1.2 million of investor funds on the Vehicles is ludicrous. The Receiver could not, in faithfully carrying

{00142496;v1}

out her duties to the defrauded investors, continue to use estate assets to maintaining depreciating assets.

## II. THE RECEIVER DOES NOT SEEK TO EXPAND THE PRELIMINARY INJUNCTIONS

The Healys mistakenly argue that the Receiver seeks to expand her purpose under the Preliminary Injunctions. The SEC TRO as extended by the Preliminary Injunction grants the Receiver the authority to take possession and title to the Vehicles and to sell those Vehicles subject to this Court's approval. *See* SEC TRO at ¶ 25. The only limits on the Receiver's power to sell the Vehicles are the requirements of 28 U.S.C. §§ 2001, 2002 and 2004. This statute, governing disposition of assets by a receiver, does not require final disposition of the underlying case prior to the sale. Such requirement would impede the Receiver in maximizing value of the estate and burden the estate with assets that are costly to preserve, such as the Vehicles. Indeed while the statute provides specific requirements, Section 2001 allows for deviation from those requirements by order of the District Court. *See* 28 U.S.C. § 2004.

Moreover, both the statute and case law permit the Court broad discretion over the administration of the receivership estate. *See SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005) ("It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."). "A district court enjoys broad

4

{00142496;v1}

equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *See Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) *citing 13 Moore's Federal Practice* ¶¶ 66.02-.03 (3d ed.1999). "As an officer of the court, the receiver's powers are coextensive with his order of appointment." *Id.*

To counter these broadly accepted principles of law, the Healys cite to various inapplicable cases, but none more off point than the Third Circuit decision, which holds that a guardian *ad litem* appointed over a plan for litigation purposes is not at all like a receiver. *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 394 (3rd Cir. 2006). The Healys then go on to cite to an unsuccessful argument contained in the dicta of the *Pressman-Gutman* case which is taken completely out of context. *See* Healy Brief in Opposition to Motion at ¶ III(A)(I). There, the Healys incorrectly argue that the Third Circuit has found, in the *Pressman-Gutman* case, that a receiver takes possession of and preserves . . . for the party ultimately entitled."

Nevertheless, the Receiver is not arguing against the Healys' basic assertion that her role is take possession of and preserve the assets that are the subject of this civil action. It should be noted that the subject of this civil action is Sean Healy

5

defrauding investors out of funds in excess of $16 million. Thus, it is those funds that the Receiver seeks to recover, protect and conserve in accordance with the role of the Receiver as stated by the Healys. There is no law that states that preservation of an asset and sale of that asset are mutually exclusive.

Finally, in this civil action, both the SEC and the CFTC have presented a *prima facie* case that Sean Healy is liable for securities fraud causing investors to turn over funds directly used to purchase the Vehicles. Mr. Healy has not provided a response except to invoke the Fifth Amendment right against self incrimination. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (finding that the Court is permitted to make adverse inference about a party in a civil action when that party refuses to testify in response to probative evidence offered against it); *In re Moses*, 792 F. Supp. 529, 536-37 (D.C. Mich. 1992) (holding that "[i]n a typical case, a court will permit a negative inference to attend the civil litigant's invocation of the privilege . . . [and] a court is permitted to impose a cost on a civil defendant who chooses to remain silent by invoking his Fifth Amendment privilege."). Therefore, it is reasonable for this Court to find that the funds used to purchase the Vehicles belong to defrauded investors so that there is no true dispute over their ownership. Undersigned counsel for the Receiver has contacted counsel for a majority of the defrauded investors (in amount invested), who favor the Receiver's prompt sale of the Vehicles for fair market value. And the Receiver suspects that every single

investor who was defrauded by the Healys would favor similar disposition of the Vehicles, which would only maximize their recovery.

Accordingly, as district courts have "wide discretion in judging whether a receiver's sale is fair in terms and results and serves the best interests of the estate[,]" the Receiver asks this Court to consider these factors and approve the proposed sales. *See Fleet Nat. Bank v. H&D Entertainment, Inc.*, 96 F.3d 532, 540 (1st Cir. 1996) (affirming sale of radio station conducted through bidding procedures proposed and conducted by equity receiver).

### III. THE RECEIVER IS MAINTAINING THE VEHICLES IN THE MOST COST EFFICIENT MANNER POSSIBLE

The Receiver has attempted to reduce the costs of maintaining the Vehicles in various ways. When the Receiver took possession of the Vehicles, she was informed by Anthony Cipriano, an exotic car specialist who assisted the Healys with the selection, purchase and maintenance of each of the Vehicles, that the Vehicles must be started and driven at least every other week, including removal from the storage facility where they are tightly parked and a drive around the block. The first time, the Receiver retained Mr. Cipriano to start and run the Vehicles. Mr. Cipriano invoiced the Receiver $350.00 for 2.5 hours of work. Allowing Mr. Cipriano to service the Vehicles, however, requires that the Receiver's employee supervise Mr. Cipriano and open and close the storage unit, as the Receiver could not reasonably be expected to provide unsupervised access to

7

anyone to assets worth nearly $1 million. Further, Mr. Cipriano cannot drive the Vehicles as the insurance policies covering the Vehicles, to which the Receiver is now the insured and loss payee, only permit one driver and the Receiver has named one of her professionals, who has experience driving exotic cars, as the insured driver. Surely, the Healys do not propose that the Receiver or her professional to operate the Vehicles without comprehensive insurance. Therefore, there is no less expensive way to maintain the Vehicles in working order.

The Receiver has also researched other storage options for when the current storage facility lease expires at the end of the year (the Healys had prepaid for it with investor funds). If the Receiver locates a less expensive unit, she will certainly relocate the Vehicles. Nevertheless, according to the Receiver's preliminary research, the storage will never be free and not likely less than $2,500.00 per month. This is still a great expense to the estate. Moreover, regardless of which storage unit the Receiver chooses, no unit includes contents insurance of $1 million (as required to properly insure the Vehicles) without adding a significant sum to the monthly rental. Accordingly, the current storage unit only includes liability insurance for events taking place within the unit.

The Healys then argue that the Vehicles are not materially depreciating because they are only being driven twice per month. This argument is uninformed or disingenuous. It is common knowledge that nearly all cars depreciate; most

{00142496;v1}

people would not pay the same amount for a 2007 vehicle that they would pay for the same 2009 vehicle regardless of mileage. The Healys then accuse auto dealers whose intentions they cannot possible know of purposefully providing false information for their own benefit. Mr. Cipriano, a car expert previously hired and trusted by the Healys to purchase and sell the Vehicles, stated at his deposition, "These cars depreciate daily, these vehicles, and especially these exotics. The Lamborghini Gallardos, for instance, are almost $100,000 behind the sticker price at the dealers. *See* Deposition of Cipriano at pg. 50, ln. 21-25 (Exhibit A).

## IV.    CONCLUSION

Notably, the Healys do not present any objections to the method of sale or proposed bidding procedures. And they make no argument that the Receiver's auction would not lead to the highest and best prices for the Vehicles. They simply re-state the requirements of 28 U.S.C. §§ 2001, 2004, without addressing the case law presented in the Motion supporting the District Court's modification of those requirements when it is in the best interest of the estate. The Healys' silence is no doubt due to the fact that Receiver's proposed procedures will likely result in the highest return for the receivership estate.

In sum, the Receiver's proposed sale of the Vehicles both preserves the value of the receivership estate and minimizes the estate's expenses. This is precisely what the Receiver is required to do by the Preliminary Injunctions. By

maximizing the amount of funds ultimately available for distribution to victims of Sean Healy's fraud, the proposed sale furthers the objectives of the receivership and should be approved.[2]

WHEREFORE, the Receiver requests entry of an Order, similar in form to that attached hereto as **Exhibit B**: (i) granting this Motion; (ii) authorizing the Receiver to use estate assets to market the Vehicles as she deems necessary to generate the greatest sale price for each Vehicle; (iii) approving the bidding procedures and the form of Notice of Opportunity to Bid attached to the Motion, and permitting the Receiver to make logistical and ministerial modifications as necessary; (iv) approving the sale of the vehicles in accordance with the terms and conditions of the Vehicle Sales Agreement, in the form attached to the Notice of Opportunity to Bid; (v) authorizing and approving the Receiver's Vehicle Sales Agreement and execution of all related title documents; (vi) approving the sale of the Vehicles to the Successful Bidder(s) upon the Receiver's selection of the Successful Bidder(s) without further order of the Court; (vii) vesting in the

---

[2] The Receiver would like to make one minor revision to the proposed bidding procedures and Notice of Opportunity to Bid regarding the disclosure of the Reserve Price. In particular, the Receiver proposes to disclose to potential bidders, before the commencement of the auction, the "Starting Price" at which the bidding will start for each vehicle and keep the Reserve Price (as defined in the Motion) hidden from bidders (like most conventional auctions) until it is reached during the bidding process. The Receiver believes that this procedure will result in higher sale prices for each Vehicle. The Receiver also requests authority to modify, add or delete other logistical and ministerial procedures as she deems necessary to effect the sale of the Vehicles and maximize the sale proceeds.

{00142496;v1}

Successful Bidder(s) title to the Vehicles free and clear of all liens, claims, encumbrances and interests; and (viii) compelling Defendant and Relief Defendants to cooperate as necessary with the Receiver to effectuate the sale of the Vehicles including, without limitation, executing any and all documents necessary to consummate the sale of the Vehicles.

Respectfully submitted,

| | |
|---|---|
| DAMIAN & VALORI, LLP<br>*Counsel for Receiver*<br>*Melanie E. Damian, Esq.*<br>1000 Brickell Avenue, Suite 1020<br>Miami, Florida  33131<br>Phone:  305-371-3960<br>Fax:  305-371-3965<br><u>s/Kenneth D. Murena</u><br>Kenneth Dante Murena<br>FL Bar No. 0147486<br>kmurena@dvllp.com | SEMANOFF ORMSBY<br>GREENBERG & TORCHIA, LLC<br><br>BY _____<br>STEPHEN C. GOLDBLUM<br>2617 Huntingdon Pike<br>Huntingdon Valley, PA  19006<br>(215) 887-0200 (Telephone)<br>(215) 887-5356 (Facsimile)<br>sgoldblum@sogtlaw.com<br>Bar No. PA 83927<br>*Counsel for Receiver*<br>*Melanie E. Damian, Esq.* |

Dated:  October 29, 2009.

11

{00142496;v1}

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing have been sent by U.S. Mail, email, and/or facsimile to the addressees on the attached Service List, this 29th day of October, 2009.

_____
STEPHEN C. GOLDBLUM
Bar No. PA 83927

{00142496;v1}

## SERVICE LIST

Sand Dollar Investing Partners, LLC
2672 Riviera Manor
Weston, Florida 33332-3422

Sand Dollar Investing Partners, LLC
c/o United States Corporation Agents, Inc.
500 N. Rainbow Blvd., Ste. 300A
Las Vegas, Nevada 89107
*Relief Defendant*

Jeffrey L. Cox, Esq.
Email: jcox@sallahcox.com
SALLAH & COX, LLC
*Counsel for Defendant & Relief Defendants*
2101 Northwest Corporate Boulevard, Suite 218
Boca Raton, Florida  33431
Telephone:  561.989.9080
Facsimile:   561.989.9020

Frederick L. Block, Esq.
  Email:  blockf@sec.gov
Patrick Feeney, Esq.
  Email:  feeneyp@sec.gov
U.S. Securities & Exchange Commission
100 F. Street, NW
Washington, D.C.  20549-6030
Telephone:  202.551.4919
Facsimile:   202.772.9245

Charles D. Marvine, Esq.
Email: cmarvine@cftc.gov
Braden M. Perry, Esq.
Email: bperry@cftc.gov
US Commodity Futures Trading Commission
Two Emanuel Cleaver II Blvd., No. 300
Kansas City , Missouri  64112
Telephone: 816.960.7743
Facsimile:   816.960.7750

{00142496;v1}